## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WAULEAU ANNA HALL, )<br>)<br>**Plaintiff,** )<br>v. )<br>)<br>ANDREW M. SAUL, )<br>**Commissioner of the Social** )<br>**Security Administration,**[1] )<br>)<br>**Defendant.** ) | Case No. CIV-19-153-SPS |

## OPINION AND ORDER

The claimant Wauleau Anna Hall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 39). She completed high school as well as some college, and has worked as a gambling dealer, proofreader, and purchasing clerk (Tr. 39, 49). The claimant alleges that she has been unable to work since December 22, 2015, due to anxiety, attention deficit disorder ("ADD"), depression, posttraumatic stress disorder ("PTSD"), pinched nerves in her back, migraine headaches, hypertension, and joint pain in her knees (Tr. 177).

## Procedural History

On May 5, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 15, 160-66). Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 27, 2018 (Tr. 12-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the nonexertional limitations of performing

-3-

simple, repetitive tasks and relating to supervisors and coworkers superficially (Tr. 20). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, touch up screener, document preparer, and final assembler (Tr. 28-30).

## Review

The claimant contends that the ALJ erred by failing to:  (i) properly consider her migraine headaches and chronic pain syndrome at step two, (ii) properly evaluate the opinions of treating physician Dr. Rogow, (iii) account for all of her impairments when forming the RFC, and (iv) identify jobs existing in significant numbers that she could perform in light of the assigned RFC.  The Court agrees the ALJ erred in formulating the RFC at step four, and the decision of the Commissioner must therefore be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the left shoulder and right knee, diabetes mellitus, obesity, depression and anxiety, but that her migraines were nonsevere (Tr. 17-18).[3]  The relevant medical records reveal that the claimant presented to the Emergency Department at Sequoyah Memorial Hospital on February 3, 2014, and reported a headache that began the previous week (Tr. 318-21).  Apart from elevated blood pressure, which the claimant attributed to not taking her blood pressure medication that day, her physical examination was normal

---

[3] Because the ALJ identified "degenerative *disc* disease of the left shoulder and right knee" as severe impairments, it is unclear whether the ALJ meant degenerative *joint* disease of the left shoulder and right knee, degenerative *disc* disease, or both.  On remand, the ALJ should clarify the impairments he intended to classify as severe.

(Tr. 319-320). She was diagnosed with migraine (typical) and prescribed twenty-four hours of rest and ibuprofen (Tr. 320).

Between January 2015 and February 2017, Dr. Mark Rogow treated the claimant for, *inter alia,* lumbar disc disease, depression, PTSD, and/or anxiety (Tr. 481-506). The claimant regularly reported back pain and headaches, but also reported pain in her hands, stomach, knees, and/or legs at times (Tr. 481-506). Dr. Rogow consistently found paraspinal tenderness in the claimant's lumbar spine with decreased range of motion (Tr. 481-506). He also sporadically noted that the claimant's pain was well controlled (Tr. 486, 488-90, 501, 503-04). A May 2015 MRI of the claimant's lumbar spine revealed moderate spondylosis at L5-S1 with right paracentral annular bulge compressing the anterior thecal sac and mildly displacing the traversing nerve root, but no impingement, central canal stenosis, or neural foraminal stenosis (Tr. 511-13). An August 2016 x-ray of the claimant's left knee revealed mild degenerative changes of the medial and patellofemoral compartments (Tr. 442).

On August 12, 2016, Dr. Wojciech Dulowski performed a physical consultative examination of the claimant (Tr. 381-86). He found, *inter alia,* that the claimant walked slowly with good safety and stability but could not walk on her "heels and tiptoes because of back pain and obesity," full grip strength and good gross and fine manipulation in her hands, full range of motion in her back with tenderness over her lumbar spine, and full range of motion in her extremities with pain on full abduction in her left shoulder and tenderness in her right knee (Tr. 381-82). Dr. Dulowski assessed the claimant with morbid obesity, PTSD, attention deficit hyperactivity disorder, major depression, mechanical back

pain (neurologically intact), history of hypertension, migraine, and history of painful right knee (Tr. 382).

On September 12, 2016, Dr. Rogow completed a physical RFC evaluation wherein he opined that the claimant could sit and stand for one hour each, walk for thirty-five minutes, lift/carry up to five pounds frequently, up to ten pounds occasionally, up to twenty pounds rarely, and could never lift/carry anything above twenty pounds (Tr. 602-03).  He also indicated that the claimant was limited in her lower and upper extremities and needed to elevate her legs when seated (Tr. 603).  As to postural limitations, Dr. Rogow stated the claimant could occasionally bend; rarely squat, stoop, crouch, balance, or climb stairs and ramps; and could never crawl, kneel or climb ladders and scaffolds (Tr. 604).  Dr. Rogow further found the claimant was markedly limited in every environmental condition he assessed except the ability to drive/ride in automotive equipment, for which he assessed a mild limitation (Tr. 604-05).  As objective support for his opinion, Dr. Rogow noted the claimant's severe depression and anxiety (Tr. 605).

Dr. Rogow also completed a migraine headache medical source statement on September 12, 2016 (Tr. 608-09).  He indicated that the claimant experiences two or three migraines per week that last between one day and two weeks (Tr. 608-09).  Dr. Rogow also indicated that during a migraine episode, the claimant is unable to concentrate or make decisions, has difficulty getting out of bed, and experiences blurry vision, aura, photo sensitivity, nausea, and vomiting (Tr. 608). Dr. Rogow opined that the claimant would be absent from work between twenty and twenty-five days per month and would miss at least two hours of work on the remaining days as a result of her migraines (Tr. 609).

Providers at Pain Management of Oklahoma treated the claimant for chronic pain syndrome, lumbar spine pain, bilateral shoulder and knee pain, and migraine headaches between October 2017 and March 2018 (Tr. 669-89). The claimant was consistently observed as having an antalgic gait at these appointments, and she consistently reported that her medications improved her ability to function, walk, exercise, clean her home, garden, grocery shop, and care for children and pets (Tr. 671-686). A physical examination on October 23, 2017, indicated reduced flexion and extension in the claimant's lumbar spine due to pain, tenderness to palpation in her cervical and lumbar paraspinal muscles, and full strength in her upper and lower extremities (Tr. 688). A November 2017 MRI of the claimant's lumbar spine revealed L3-S1 degenerative changes producing neural foraminal narrowing and slight effacement of the pre-foraminal right S1 nerve root (Tr. 653-54). An MRI of the claimant's thoracic spine conducted the same day was normal (Tr. 655). In March 2018, the claimant's physical examination was normal apart from an antalgic gait (Tr. 671).

State agency physicians reviewed the record in August 2016 and November 2016 and found the claimant could perform light work with standing and walking limited to a combined maximum of four hours due to obesity (Tr. 65-66, 84-85).

At the administrative hearing, the claimant testified that she typically has migraine headaches "a couple times per week" that she treats with ibuprofen, or if the medication is not effective, by lying in a dark or quiet room or taking a shower (Tr. 42). She further testified that she has had back pain since she was in high school and that her medications are effective if she is able to lie in one position, but they make her feel "fuzzy" and sleepy

(Tr. 42). As to specific limitations, the claimant stated that she could not lift over ten pounds, could not carry anything, and could not perform a sit-down job due to back pain and her need to change positions to relieve pain (Tr. 43-44).

In his written opinion, the ALJ thoroughly summarized the claimant's testimony and the evidence contained in the medical record (Tr. 17-28). In finding the claimant's history of migraines nonsevere at step two, the ALJ noted her complaints were addressed with medication, there was little to no evidence of emergent or inpatient treatment for migraines, and she denied medication side effects (Tr. 17-18). In discussing the opinion evidence at step four, the ALJ gave little to no weight to Dr. Rogow's physical RFC and headache questionnaire, finding his extreme limitations exceeded what the objective evidence showed, particularly Dr. Dulowski's consultative examination and the claimant's treatment on an outpatient basis with medication, and were internally inconsistent (Tr. 28). The ALJ further discounted Dr. Rogow's headache questionnaire because it was "clearly based on the claimant's subjective complaints of headache frequency and intensity," which the ALJ found were not supported by the longitudinal medical evidence, specifically her treatment with medication only, normal mental status examinations, and presentation at appointments (Tr. 21, 26, 28). The ALJ then gave some weight to the state agency physicians' opinions, but further limited the claimant to sedentary work in light of their finding that she was limited to a combined total of four hours of walking and standing in a day due to her obesity (Tr. 28).

The claimant asserts that the ALJ erred at step two by failing to classify her migraine headaches as severe and by failing to classify her chronic pain syndrome entirely. This

-8-

was not reversible error in and of itself, as the ALJ's determination that the claimant had other severe impairments required the ALJ to account for the claimant's migraine headaches and chronic pain syndrome at step four even if they did not amount to severe impairments. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). In this case, although the ALJ summarized the evidence relating to the claimant's migraines and chronic pain syndrome, he nevertheless committed reversible error by failing to account for these impairments at step four, either by including limitations in the claimant's RFC or explaining why such limitations were unnecessary. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them.").

The claimant further asserts that the ALJ erred at step four by failing to account for her left shoulder and right knee impairments, both of which the ALJ classified as severe at step two. "The ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Although the ALJ limited the claimant to sedentary work due to her obesity and recited the evidence regarding her left shoulder and right knee impairments, the ALJ has connected no evidence in the record to instruct this Court as to how the stated RFC accounts for any of the claimant's severe physical impairments except obesity. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. A reviewing court may not properly determine how the ALJ reached the RFC determination when the ALJ "merely summarizes" much of the

relevant evidence, states that he considered the entire record, "and then announces his decision." *Brant v. Barnhart*, 506 F. Supp. 2d 476, 486 (D. Kan. 2007) [internal quotation marks omitted].  The ALJ's conclusory findings thus require remand for the ALJ to explain his decision.

Because the ALJ failed to properly evaluate *all* the claimant's impairments singly and in combination, and further failed to provide a narrative discussion of how the evidence supports the RFC, the decision of the Commissioner is therefore reversed, and the case remanded to the ALJ for further analysis of the claimant's impairments.  If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 10th day of September, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**